SANFORD L. MICHELMAN (SBN 179702)
smichelman@mrllp.com
TIMOTHY J. GORRY (SBN 143797)
tgorry@mrllp.com
ALEXANDER R. SAFYAN (SBN 277856)
asafyan@mrllp.com
CAMILLE R. YONA (SBN 329486)
cyona@mrllp.com
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Boulevard, 19th Floor
Los Angeles, California 90024
Telephone:  (310) 299-5500
Facsimile:   (310) 299-5600

Attorneys for Defendants
BOOSTED COMMERCE INC. AND
BOOSTED ECOMMERCE, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THRASIO, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>BOOSTED COMMERCE INC. AND BOOSTED ECOMMERCE, INC.,<br><br>  Defendants. | Case No. 2:21-cv-01337-CBM-SK (related to Case No. 2:21-cv-2422-FMO-MRW)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      April 27, 2021<br>Time:      10:00 a.m.<br>Courtroom: 8B, 8th Floor<br>Judge:     Hon. Consuelo B. Marshall<br><br>[Declarations of Charles Chanaratsopon and Timothy J. Gorry and (Proposed) Order submitted herewith]<br><br>Action Filed:  February 12, 2021<br>Trial Date:    None set |

**DEFENDANTS' MOTION TO COMPEL ARBITRATION**

# NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THE PARTIES' ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on April 27, 2021 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Consuelo B. Marshall, in Courtroom 8B, 8th Floor, of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012, Defendants Boosted Commerce Inc. and Boosted Ecommerce, Inc. (collectively, "Defendants") will, and hereby do, move for an order compelling arbitration of Plaintiff Thrasio, LLC's ("Plaintiff" or "Thrasio") claims.

This Motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*, and on the grounds that: (1) a contract with a valid and binding arbitration provision governs the claims Plaintiff has pled against Defendants, requiring arbitration of all of Plaintiff's claims; and (2) Plaintiff cannot show that the arbitration provision is invalid or otherwise unenforceable. Defendants ask this Court to dismiss Plaintiff's claims so that they can be arbitrated or, in the alternative, stay this lawsuit pending arbitration of all claims the Court determines to be arbitrable.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place via written correspondence on March 18 and 25, 2021 and then via telephone on March 26, 2021. This Motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the declarations of Charles Chanaratsopon and Timothy J. Gorry, all pleadings and papers on file with the Court, and such other matters as the Court may consider at or before the hearing on this Motion.

Date: March 29, 2021

**MICHELMAN & ROBINSON, LLP**

By: */s/ Timothy J. Gorry*
Sanford L. Michelman
Timothy J. Gorry
Alexander R. Safyan

1

**DEFENDANTS' MOTION TO COMPEL ARBITRATION**

1  Camille R. Yona
2  Attorneys for Defendants
3  BOOSTED COMMERCE INC. AND
   BOOSTED ECOMMERCE, INC.

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 2

    A.    Plaintiff's Allegations and Theories of Misappropriation Rely on the Confidentiality Obligations Chanaratsopon Assented to in Certain Contracts. 2

    B.    The Operating Agreement Contains an Express Arbitration Provision ............ 3

III.  ARGUMENT ........................................................................................................ 3

    A.    The Federal Arbitration Act Encourages Arbitration and Mandates That Arbitrable Claims Be Arbitrated ........................................................................ 3

    B.    No Party Questions the Validity of the Operating Agreement, and the Operating Agreement Includes a Broad Arbitration Obligation ....................... 5

    C.    The Operating Agreement Encompasses the Dispute and Claims at Issue, and It Requires the Parties to Arbitrate Plaintiff's Claims ....................................... 6

        1.    Plaintiff's Claims Fall Within the Broad Scope of the Arbitration Clause ................................................................................................................ 6

        2.    By Basing Its Claims on the Operating Agreement, and Because It Directly Benefitted from the Agreement, Plaintiff Cannot Avoid the Obligation to Arbitrate ............................................................................... 6

        3.    Boosted Is Also an Appropriate Party to the Arbitration ....................... 8

    D.    Dismissal Is the Appropriate Remedy Here to Allow Plaintiff to Pursue Its Claims in Arbitration ......................................................................................... 10

    E.    In the Alternative, Defendants Ask the Court to Stay the Proceedings Pending the Outcome of Arbitration .................................................................................. 10

IV.  CONCLUSION .................................................................................................... 11

# TABLE OF AUTHORITIES[1]

**Page(s)**

**Federal Cases**

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.*,
  622 F. Supp. 2d 825 (N.D. Cal. 2007).................................................................9, 11

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
  785 F.3d 1320 (9th Cir. 2015) ..................................................................................4

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986).................................................................................................4

*Bernhardt v. Polygraphia Co.*,
  350 U.S. 198 (1956).................................................................................................3

*Chavez v. Bank of America*,
  2011 WL 4712204 (N.D. Cal. Oct. 7, 2011) ...........................................................9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ...........................................................................4, 10

*CPB Contractors Pty Ltd. v. Chevron Corp.*,
  2017 WL 7310776 (N.D. Cal. Jan. 17, 2017)........................................................11

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985).................................................................................................4

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*,
  9 F.3d 1060 (2d Cir. 1993) ......................................................................................7

*Ferguson v. Corinthian Colleges, Inc.*,
  733 F.3d 928 (9th Cir. 2013) ...................................................................................4

*Green Tree Fin. Corp. v. Randolph*,
  531 U.S. 79 (2000)...................................................................................................5

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
  206 F.3d 411 (4th Cir. 2000) ...............................................................................6, 7

---

[1] All emphases in this brief are added and internal alterations omitted unless stated otherwise.

*Johnmohammadi v. Bloomingdale's, Inc.*,
  755 F.3d 1072 (9th Cir. 2014) ..................................................................................10

*Kilgore v. KeyBank, Nat. Ass'n*,
  718 F.3d 1052 (9th Cir. 2013) ....................................................................................5

*Larson v. Speetjens*,
  2006 WL 2567873 (N.D. Cal. Sept. 5, 2006) ...........................................................8, 9

*Letizia v. Prudential Bache Secs., Inc.*,
  802 F.2d 1185 (9th Cir. 1986) ....................................................................................9

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995) ......................................................................................................4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ........................................................................................................8

*Peck Ormsby Const. Co. v. City of Rigby*,
  526 Fed. Appx. 769 (9th Cir. 2013) ............................................................................7

*Sparling v. Hoffman Const. Co., Inc.*,
  864 F.2d 635 (9th Cir. 1988) ....................................................................................10

*Tamsco Props., LLC v. Langemeier*,
  2013 WL 246782 (E.D. Cal. Jan. 22, 2013) ...............................................................7

*Thomson–CSF, S.A. v. American Arbitration Ass'n*,
  64 F.3d 773 (2d Cir. 1995) .........................................................................................7

**California Cases**

*Izzi v. Mesquite Country Club*,
  186 Cal. App. 3d 1309 (1986), *abrogated on other grounds by Sandquist v.
  Lebo Auto., Inc.*, 1 Cal. 5th 233 (2016) .......................................................................5

**Federal Statutes**

9 U.S.C.
  § 2 ................................................................................................................................4
  § 3 .......................................................................................................................10, 11

Federal Arbitration Act, 9 U.S.C.
  §§ 1 ..............................................................................................................................3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This dispute belongs in arbitration. By way of background, Plaintiff Thrasio, LLC ("Thrasio" or "Plaintiff") has filed identical actions against Defendants Boosted Commerce Inc. and Boosted Ecommerce, Inc. ("Boosted" or "Defendants"), on the one hand, and Boosted's co-founder Charles Chanaratsopon ("Chanaratsopon"), on the other hand, both of which are pending in the United States District Court for the Central District of California.[2] The operative complaint(s) allege that Boosted and Chanaratsopon violated the federal Defend Trade Secrets Act and analogous state laws through a coordinated effort to misappropriate Plaintiff's trade secrets and proprietary processes, which allegedly then allowed newly-formed Boosted to more quickly and effectively compete with Plaintiff.

Plaintiff's misappropriation theories focus on, arise out of, and relate to certain contractual confidentiality obligations Chanaratsopon supposedly owed to Plaintiff as an investor in Plaintiff. One, in particular, stems from the core contract through which third-party investment firm Upper90 and, indirectly, Chanaratsopon invested in Plaintiff. That contract, on which Plaintiff relies for its claims, contains a broad, express provision requiring *any* claims related to that contract to be arbitrated. It is that contract—and its arbitration clause—that compels arbitration of the claims here.

Through this Motion, Defendants ask the Court to compel Plaintiff to arbitrate its claims and dismiss this lawsuit or, in the alternative, stay the proceedings pending the conclusion of the required arbitration.

---

[2] Plaintiff originally filed the action against Chanaratsopon in the United States District Court for the Southern District of Texas (*Thrasio, LLC v. Chanaratsopon*, Case No. 4:21-cv-00507 (the "Texas Action")). The parties have stipulated that the Texas Action (which has been transferred and is now pending in the Central District of California as Case No. 2:21-cv-2422-FMO-MRW) be consolidated with the present action. (*See* Declaration of Timothy J. Gorry ("Gorry Decl.") ¶¶ 7-8; Joint Stipulation to Consolidate Cases (ECF No. 26).) However, because the actions have not yet been consolidated at the time of this filing, Defendants are filing substantially similar motions to compel arbitration in both actions.

## II. <u>FACTUAL BACKGROUND</u>

### A. <u>Plaintiff's Allegations and Theories of Misappropriation Rely on the Confidentiality Obligations Chanaratsopon Assented to in Certain Contracts</u>

All of Plaintiff's claims are based on the alleged misappropriation of its trade secrets by Chanaratsopon and Boosted. The Complaint here alleges that Chanaratsopon gained access to Plaintiff's trade secrets through a dataroom Plaintiff maintained so that actual and potential investors could conduct their due diligence. (Compl. ¶¶ 43, 52.) Plaintiff alleges that Chanaratsopon, through his access as an investor in Thrasio, used those trade secrets to form a competitor to Plaintiff, namely Boosted, and quickly grow Boosted's operations[3] so that it could effectively compete with Plaintiff. (*Id.* ¶¶ 2, 12-13.)

Plaintiff contends that Chanaratsopon was subject to a number of contractual confidentiality obligations that prohibited him from using the information he reviewed in Plaintiff's dataroom for any purpose other than deciding whether to make an investment in Plaintiff. Plaintiff generally avers that "[i]n connection with each of Chanaratsopon's three investments [in Plaintiff], Chanaratsopon agreed to keep documents relating to the investment received from [the prime investor] confidential." (Compl. ¶ 57.) Plaintiff then identifies the specific contracts that contained the relevant confidentiality obligations. One of these contracts is the operating agreement for the investment vehicle through which Chanaratsopon invested in Thrasio in June 2020. (*Id.* ¶ 59.) The agreement is titled "LIMITED LIABILITY COMPANY AGREEMENT UPPER90 THRASIO V SPV LLC" (the "Operating Agreement"). (Chanaratsopon Decl. ¶¶ 4-5 and Ex. A.)

The Complaint alleges that through the Operating Agreement, and specifically Article 9.6, Chanaratsopon "had a duty not to use [Plaintiff's] information for any purpose other than evaluating an investment in [Plaintiff]," yet misappropriated that information in order to quickly develop Boosted's operations. (Compl. ¶¶ 59 and 61-70.) Plaintiff quotes the

---

[3] Boosted Commerce Inc. does not have, and has never had, any operations. (*See* Declaration of Charles Chanaratsopon ("Chanaratsopon Decl.") ¶ 3.)

entirety of Article 9.6 of the Operating Agreement in the Complaint. (*Id.* ¶ 59.) Plaintiff then incorporates the factual allegations concerning the Operating Agreement directly into each of the three claims pled in the Complaint. (*Id.* ¶¶ 71, 82, 93.)

### B. The Operating Agreement Contains an Express Arbitration Provision

Though the Complaint's allegations focus on only one provision of the Operating Agreement, other provisions are directly relevant to and govern the claims Plaintiff pled in the Complaint. Importantly, the Operating Agreement contains an express provision broadly requiring that *all* claims arising out of or relating to the contract be arbitrated. In full, that provision reads:

> 14.8   Dispute Resolution. ***Any dispute***, ***controversy or claim arising out of or relating to this Agreement***, or the breach of this Agreement, except for any claim or action that the Manager or Fund may elect to commence to enforce any of its rights or the Members obligations under this Agreement or the Subscription Agreement, ***will be settled by binding arbitration,*** before three arbitrators, ***administered by the American Arbitration Association*** under and in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction.

(Chanaratsopon Decl., Ex. A.)

## III. ARGUMENT

### A. The Federal Arbitration Act Encourages Arbitration and Mandates That Arbitrable Claims Be Arbitrated

The Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* (the "FAA"), broadly governs claims that involve commerce. *Bernhardt v. Polygraphia Co.*, 350 U.S. 198, 200 (1956). Both Plaintiff and Defendants are involved in the business of acquiring and growing third-party producers of consumer goods, which they then sell and distribute through Amazon.com. (Compl. ¶ 3 (alleging that Plaintiff "buys and grows Amazon businesses . . . then markets and sells those consumer goods, primarily on Amazon.com") and ¶¶ 8-9, 13 (alleging that Boosted, who employs Chanaratsopon, directly competes with Plaintiff and

acquires third party sellers in order to sell products through Amazon.com).)

The FAA establishes a national policy favoring arbitration where a contract provides for that mode of dispute resolution, and it mandates arbitration when a court is satisfied that the execution of an arbitration agreement is not at issue. *See, e.g., Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218-19 (1985) (citing 9 U.S.C. §§ 3, 4 and determining that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed" (emphasis in original)); *see also Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 932 (9th Cir. 2013) (the FAA "reflects an 'emphatic federal policy' in favor of arbitration"). Under the FAA, a written provision "in any . . . contract . . . involving commerce to settle by arbitration a controversy thereafter arising . . . **shall** be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Indeed, the United States Supreme Court has articulated that the "central purpose" of the FAA is to "ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995).

This Court's role in resolving a motion to compel arbitration is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). The Court is guided by "a presumption of arbitrability" and any "[d]oubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

As demonstrated below, the two elements the Court considers are met here. There is a valid agreement to arbitrate (to which the parties are bound), and the broad scope of that agreement encompasses the dispute at issue.

///

///

B. **No Party Questions the Validity of the Operating Agreement, and the Operating Agreement Includes a Broad Arbitration Obligation**

The issue of validity focuses on generally applicable contract defenses, such as fraud, duress, or unconscionability, which may be raised to invalidate arbitration agreements. *See Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (rejecting Plaintiff's argument that the arbitration provision at issue was either substantively or procedurally unconscionable). Here, none of the parties to the lawsuit have raised questions about the validity of the Operating Agreement. Plaintiff underpinned its claims with the Operating Agreement's confidentiality obligations. (Compl. ¶¶ 57, 59.) It would not, and certainly could not, have done so if it planned to take the position that the contract was invalid, void, or unconscionable. Chanaratsopon, too, agrees that the Operating Agreement, and the arbitration clause it contains, is valid and enforceable. (Chanaratsopon Decl. ¶ 7.)

The face of the Operating Agreement itself does not disclose any indicia of unconscionability. The arbitration provision is separately set out and appears alongside an aptly-named heading explicitly titled "Dispute Resolution." (Chanaratsopon Decl., Ex. A.) The arbitration provision does not favor one party over another, and it compels that the arbitration be conducted through a well-known provider, the American Arbitration Association.[4] (*Id.*)

In short, the Operating Agreement and its arbitration clause are valid and enforceable.

///
///
///

---

[4] Courts routinely find that the AAA is an appropriate arbitration forum. *See, e.g., Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 95 (2000) (comparing AAA to other national arbitration organizations with similar models for "fair cost and fee allocation"); *Izzi v. Mesquite Country Club*, 186 Cal. App. 3d 1309, 1318 (1986) ("[t]he rules of the American Arbitration Association specified by the clause as governing the resolution of disputes are generally regarded to be neutral and fair"), *abrogated on other grounds by Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 250 (2016).

**C. The Operating Agreement Encompasses the Dispute and Claims at Issue, and It Requires the Parties to Arbitrate Plaintiff's Claims**

**1. Plaintiff's Claims Fall Within the Broad Scope of the Arbitration Clause**

Plaintiff's Complaint alleges a number of contractual bases for the confidentiality obligations Chanaratsopon (and, by extension, Boosted) allegedly owed to Plaintiff. One basis is the Operating Agreement. Paragraphs 59 and 61-70 of the Complaint allege that through the Operating Agreement, and specifically Article 9.6, Chanaratsopon "had a duty not to use [Plaintiff's] information for any purpose other than evaluating an investment in [Plaintiff]," yet Chanaratsopon misappropriated that information in order to quickly develop Boosted's operations. Plaintiff then incorporates these factual allegations into each of the three claims pled in the Complaint. (Compl. ¶¶ 71, 82, 93.) These allegations demonstrate that each of Plaintiff's claims, at least in part, are based on, arise from, or relate to the Operating Agreement's confidentiality protections and the alleged breach of those obligations.

These claims fall squarely within the very broad parameters of the Operating Agreement's arbitration provision. Again, that provision states that "[*a*]*ny dispute, controversy or claim arising out of or relating to this Agreement . . . will be settled by binding arbitration*." (Chanaratsopon Decl., Ex. A, p. 30.) For this reason, the claims are arbitrable.

**2. By Basing Its Claims on the Operating Agreement, and Because It Directly Benefitted from the Agreement, Plaintiff Cannot Avoid the Obligation to Arbitrate**

Plaintiff may contend that it is not obligated to arbitrate its claims because Plaintiff was not a signatory to the Operating Agreement. This is a failing argument. While generally "a contract cannot bind parties to arbitrate disputes they have not agreed to arbitrate, [i]t does not follow . . . that under the [FAA] an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision." *Int'l Paper Co. v. Schwabedissen*

*Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000). Courts have identified a number of circumstances that require a non-signatory to arbitrate its claims, including incorporation by reference, assumption, agency, alter ego, and estoppel principles. *See Thomson–CSF, S.A. v. American Arbitration Ass'n,*, 64 F.3d 773, 776 (2d Cir. 1995); *Peck Ormsby Const. Co. v. City of Rigby*, 526 Fed. Appx. 769, 770 (9th Cir. 2013).

The *Int'l Paper Co.* decision provides an analogous situation. There, the plaintiff, International Paper,[5] brought claims that arose out of an agreement to which International Paper was not a signatory. *Int'l Paper Co.*, 206 F.3d at 414. International Paper opposed a motion to stay pending arbitration and a later arbitration award on the basis that the arbitration clause in that agreement could not be enforced against it because International Paper was not a signatory to the contract. *See id.* at 416. The district court found otherwise, and the Court of Appeals affirmed.

The Court of Appeals held that equitable estoppel barred International Paper from refusing to arbitrate because the contract "provides *part of the foundation for every claim* asserted by International Paper." *Id.* at 418. Simply put, International Paper could not "seek to enforce [] contractual rights and avoid the contract's requirement that 'any dispute arising out of' the contract be arbitrated." *Id.* Other courts, including the Ninth Circuit and district courts in California, are in accord. *See, e.g., Peck*, 526 Fed. Appx. at 770 (compelling arbitration against the City of Rigsby because "[e]ven though the city never signed the guarantee [containing the arbitration clause], it 'cannot accept its benefits and at the same time question its validity'"); *Tamsco Props., LLC v. Langemeier*, 2013 WL 246782, at *7 (E.D. Cal. Jan. 22, 2013) (compelling arbitration against non-signatories where "Plaintiffs embraced the [] Agreement and now turn their backs to its arbitration clause"); *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993) (compelling non-signatory to submit to arbitration clause in contract where it "knowingly accepted the

---

[5] International Paper substituted into the lawsuit in place of its predecessor-in-interest, Westinghouse. *See* 206 F.3d at 415. This is the apparent reason for references to Westinghouse in portions of the opinion. For clarity, we refer only to International Paper.

benefits of the Agreement"); *Larson v. Speetjens*, 2006 WL 2567873, at *7-9 (N.D. Cal. Sept. 5, 2006) (compelling arbitration where non-signatory plaintiffs were bound to the terms of the agreement under principles of equitable estoppel and agency).

Here, Plaintiff has put itself in the same situation. Plaintiff's claims are based on express terms of the Operating Agreement, in particular the confidentiality obligations Chanaratsopon assumed under that contract. Indeed, *part of the foundation for every claim* asserted by Plaintiff is that Chanaratsopon (and therefore Boosted) owed these contractual confidentiality obligations to Plaintiff and breached them by allegedly misappropriating Plaintiff's trade secrets. Equitable estoppel principles and fundamental fairness dictate that by affirmatively leveraging those obligations for the benefit of its claims, Plaintiff must also be held to the Operating Agreement's arbitration obligation.

Moreover, both the allegations of the Complaint and the contract itself make clear that the Operating Agreement directly benefitted Plaintiff. At its core, the Operating Agreement was the vehicle that allowed Chanaratsopon, through Upper90, to make a financial investment in Plaintiff. (Compl. ¶¶ 57, 59.) Plaintiff intimates that the very purpose of the confidentiality provision in the Operating Agreement was to ultimately protect Plaintiff. (*See id.*) There is no doubt that Plaintiff had, and has, knowledge of the Operating Agreement and its contents. To be sure, Plaintiff quoted extensively from the contract in its Complaint. (*See, e.g., id.* ¶ 59.) These facts all support enforcing the Operating Agreement's arbitration provision against Plaintiff.

### 3. Boosted Is Also an Appropriate Party to the Arbitration

Boosted, like Thrasio, is not a signatory to the Operating Agreement. Again, this does not mean that Boosted cannot avail itself of the arbitration provision, given that Plaintiff's claims arise from the Operating Agreement and the claims against Boosted are inextricably intertwined with those Plaintiff has asserted against Chanaratsopon (who is a direct signatory). The United States Supreme Court has held that "[u]nder the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses H. Cone*

*Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983); *see also Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 830 (N.D. Cal. 2007) ("[A] signatory can compel a nonsignatory to arbitrate" and "a nonsignatory can compel a signatory to arbitrate"); *Chavez v. Bank of America*, 2011 WL 4712204, at *6 (N.D. Cal. Oct. 7, 2011) (concluding that third-party Intersections could enforce the contract's terms, including the arbitration provision, despite Plaintiff's argument otherwise) (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("[N]onsignatories can enforce arbitration agreements as third party beneficiaries.")).

Courts in the Ninth Circuit and elsewhere consistently allow non-signatory third parties to enforce arbitration provisions through theories of agency or third-party beneficiary status. *See, e.g., Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) (In addition to the Ninth Circuit, "[o]ther circuits have held consistently that nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles.").

Here, the claims against Boosted are directly predicated on the relationship between Chanaratsopon and Boosted. Plaintiff alleges that Chanaratsopon is the Chief Financial Officer of Boosted and a founder of the company. (Compl. ¶ 76.) Plaintiff avers that Chanaratsopon reviewed and downloaded Plaintiff's confidential documents for purposes of forming and growing Boosted, and that Boosted used, and continues to use, the misappropriated trade secrets for its operations. (*Id.* ¶¶ 12-13.) In this way, Plaintiff claims that Chanaratsopon's violations of the confidentiality obligations imposed upon him by the Operating Agreement directly benefited Boosted. (*Id.* ¶ 59.) The relationship between Chanaratsopon and Boosted is an indispensable part of Plaintiff's claims and provides a basis for Boosted to seek arbitration of Plaintiff's claims. *See Larson*, 2006 WL 2567873, at *7 (compelling arbitration where "Plaintiffs' entire case hinge[d] on the … relationship created by the Agreements" and where "Plaintiffs' claims [were] inextricably intertwined with the Agreements").

For the avoidance of doubt, Boosted agrees to participate in any arbitration

proceedings the Court compels Plaintiff and Chanaratsopon to undertake. Due to the interrelation between Plaintiff's claims against Chanaratsopon and Boosted, it makes little sense for them to be resolved in two different fora.

### D. Dismissal Is the Appropriate Remedy Here to Allow Plaintiff to Pursue Its Claims in Arbitration

In the Ninth Circuit, courts have the power to dismiss a party's complaint where the court finds that the arbitration provision covers all of the party's claims. *See, e.g., Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073 (9th Cir. 2014) (affirming dismissal of action where "all of [the plaintiff's] claims fall within the scope of th[e] arbitration agreement"); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (affirming dismissal of action where "the arbitration clause was broad enough to bar all of the plaintiff's claims since it required [the plaintiff] to submit all claims to arbitration").

Dismissal is appropriate here due to the broad scope of the arbitration clause. It requires arbitration of ***any*** "controversy or claim arising out of or relating to this Agreement." (Chanaratsopon Decl., Ex. A, p. 30.) As discussed in detail in section C above, each of Plaintiff's claims are based on, arise out of, or relate to the Operating Agreement. For that reason, all of Plaintiff's claims should be arbitrated, and this lawsuit should be dismissed. *See Chiron Corp.*, 207 F.3d at 1134 (compelling the parties' entire dispute to arbitration where the "arbitration clause [bound] them to arbitrate 'any dispute, controversy or claim arising out of or relating to' the Agreement").

### E. In the Alternative, Defendants Ask the Court to Stay the Proceedings Pending the Outcome of Arbitration

In the event the Court does not dismiss this action (it should, for all the reasons stated above), it should at the very least stay these proceedings pending the outcome of those claims that are sent to arbitration. *See* 9 U.S.C. § 3 (when a court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration" it "shall on application of one of the parties stay the trial of the action until such arbitration has been had"). A stay would be

appropriate if the Court determines that some, but not all, of the claims are arbitrable—for example, if the claims against Boosted are not arbitrable, but those against Chanaratsopon (a direct signatory to the Operating Agreement) are. Courts interpreting the statute have held that 9 U.S.C. § 3 "allows a court to stay claims against a nonsignatory based on an arbitration agreement where litigation of the claims against the nonsignatory would have adversely affected the signatory's right to arbitration." *CPB Contractors Pty Ltd. v. Chevron Corp.*, 2017 WL 7310776, at *5 (N.D. Cal. Jan. 17, 2017); *see also Amisil*, 622 F.Supp.2d at 842 (stay appropriate where a failure to stay would prejudice a party's right to arbitration). A stay would be necessary here to preserve the status quo while arbitration is completed. If the litigation is not stayed, due to the nature of Plaintiff's intertwined claims against Chanaratsopon and Boosted, further court proceedings on only some claims would necessarily be duplicative of, and could cause conflicting rulings in, the arbitration proceedings.

## IV.  CONCLUSION

As discussed above, *all* of Plaintiff's claims at least in part are based on, arise from, or relate to the Operating Agreement, which contains a broad, express arbitration provision. There is no question about the validity of that contract. By basing its claims upon that contract, Plaintiff is bound to comply with the contract's arbitration obligations. Defendants respectfully request that this Court grant their Motion, compel Plaintiff to arbitrate its claims, and dismiss this lawsuit or, in the alternative, stay proceedings pending the conclusion of the required arbitration.

Date: March 29, 2021

**MICHELMAN & ROBINSON, LLP**

By:  */s/ Timothy J. Gorry*
Sanford L. Michelman
Timothy J. Gorry
Alexander R. Safyan
Camille R. Yona
Attorneys for Defendants
BOOSTED COMMERCE INC. AND
BOOSTED ECOMMERCE, INC.