COOLEY LLP
Randall R. Lee (CA Bar #152672)
randall.lee@cooley.com
1333 2nd Street, Suite 400
Santa Monica, CA 90401-4100
Tel. (310) 883-6485
Fax. (310) 883-6500

Philip M. Bowman, *pro hac vice*
pbowman@cooley.com
Nicholas A. Flath, *pro hac vice*
nflath@cooley.com
55 Hudson Yards
New York, New York 10001
Tel. (212) 479-6000
Fax. (212) 479-6275

Counsel for Plaintiff Thrasio, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRASIO, LLC,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>BOOSTED COMMERCE, INC.,<br>BOOSTED ECOMMERCE, INC.,<br><br>　　　　　Defendants. | Case No. 2:21-CV-1337 (CBM) (SK)<br>(related to Case No. 2:21-cv-2422 (CBM) (SK))<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION**<br><br>Date: May 11, 2021<br>Time: 10:00 a.m.<br>Courtroom: 8B, 8th Floor<br>Judge: Hon. Consuelo B. Marshall<br><br>Action Filed: February 12, 2021<br>Trial Date: None set |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND ...................................................................................................... 2

ARGUMENT ............................................................................................................ 3

    I.    Thrasio Is Not A Party To The Upper90 Agreement ........................... 3

    II.    Thrasio Is Not Estopped From Refusing To Arbitrate ......................... 5

    III.    Boosted Cannot Invoke the Arbitration Clause ................................... 9

    IV.    The Arbitration Clause Does Not Cover This Dispute ...................... 11

CONCLUSION ....................................................................................................... 12

# TABLE OF AUTHORITIES

Page

**Cases**

*Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*,
　622 F. Supp. 2d 825 (N.D. Cal. 2007) .................................................................. 11

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
　475 U.S. 643 (1986) ............................................................................................... 3

*Ayco Co., L.P. v. Frisch*,
　2012 WL 42134 (N.D.N.Y. Jan. 9, 2012) ............................................................... 9

*Chavez v. Bank of America*,
　2011 WL 4712204 (N.D. Cal. Oct. 7, 2011) ......................................................... 11

*Chemence, Inc. v. Quinn*,
　2012 WL 12873615 (N.D. Ga. Oct. 15, 2012) ...................................................... 11

*Cherry Creek Card & Party Shop, Inc. v. Hallmark Mktg. Corp.*,
　176 F. Supp. 2d 1091 (D. Colo. 2001) ................................................................... 9

*Comer v. Micor, Inc.*,
　436 F.3d 1098 (9th Cir. 2006) ............................................................................ 5, 6

*Crypto Asset Fund, LLC v. OPSkins Group Inc.*,
　478 F. Supp. 3d 919 (C.D. Cal. 2020) .................................................................... 4

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*,
　9 F.3d 1060 (2d Cir. 1993) ..................................................................................... 6

*E.E.O.C. v. Waffle House, Inc.*,
　534 U.S. 279 (2002) ............................................................................................... 4

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*,
　269 F.3d 187 (3d Cir. 2001) ................................................................................... 5

*Eclipse Consulting, Inc. v. BDO USA, LLP*,
　2018 WL 6735085 (D. Or. Nov. 13, 2018) ............................................................ 5

*In re Henson*,
　869 F.3d 1052 (9th Cir. 2017) ............................................................................ 3, 7

## TABLE OF AUTHORITIES
(continued)

Page

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*,
2012 WL 12960766 (C.D. Cal. Dec. 7, 2012) ............................................. 7, 8, 9

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*,
2015 WL 13423890 (C.D. Cal. Jan. 5, 2015) ................................................. 8, 10

*Int'l Paper Co. v. Schwabdissen Maschinen & Anlagen GMBH*,
206 F.3d 411 (4th Cir. 2000) ............................................................................ 5, 6

*Jones v. Jacobson*,
195 Cal. App. 4th 1 (2011), *as modified* (June 1, 2011) ...................................... 4

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) ................................................................................ 4

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011) .............................................................................................. 10

*Kuroda v. SPJS Holdings, L.L.C.*,
2010 WL 4880659 (Del. Ch. Nov. 30, 2010) ..................................................... 11

*Larson v. Speetjens*,
2006 WL 2567873 (N.D. Cal. Sept. 5, 2006) ....................................................... 6

*LBDS Holding Co., LLC v. ISOL Tech. Inc.*,
2012 WL 12893527 (E.D. Tex. Sept. 20, 2012) ................................................... 9

*Letizia v. Prudential Bache Securities, Inc.*,
802 F.2d 1185 (9th Cir. 1986) ............................................................................ 10

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 (1995) ................................................................................................ 3

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ................................................................................................ 10

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013) .............................................................................. 5

*Peck Ormsby Const. Co. v. City of Rigby*,
526 Fed. App'x 769 (9th Cir. 2013) ..................................................................... 5

# TABLE OF AUTHORITIES
(continued)

Page

*Tamsco Props., LLC v. Langemeier*,
  2013 WL 246782 (E.D. Cal. Jan. 22, 2013) ........................................................... 6

*Thomson-CSF, S.A. v. American Arbitration Ass'n*,
  64 F.3d 773 (2d Cir. 1995) ............................................................................... 3, 6

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
  925 F.2d 1136 (9th Cir. 1991) ............................................................................. 4

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
  36 U.S. 574 (1960) .............................................................................................. 3

*Waymo LLC v. Uber Techs., Inc.*,
  252 F. Supp. 3d 934 (N.D. Cal.),
  *aff'd*, 870 F.3d 1342 (Fed. Cir. 2017) ............................................................. 8, 9

*Whole Body Rsch., LLC v. Dig. MD, LLC*,
  2018 WL 3830902 (C.D. Cal. July 3, 2018) ....................................................... 7

**Statutes**

18 U.S.C.
  §§ 1836 *et seq.* .................................................................................................... 6
  § 1839(5)(B)(ii)(II) .............................................................................................. 7

Cal. Bus. and Prof. Code §§ 17200 *et seq.* ............................................................. 2

Cal. Civ. Code §§ 3426 *et seq.* ............................................................................... 6

# PRELIMINARY STATEMENT

Defendants seek an order compelling Thrasio to arbitrate its claims against Defendants for misappropriation of trade secrets. Defendants' motion must be denied.

It is axiomatic that arbitration is a creature of contract and that, accordingly, a party cannot be compelled to arbitrate unless it agreed to do so. Defendants rely on an arbitration clause in the operating agreement for an entity called Upper90Thrasio V SPV LLC, in which Charles Chanaratsopon—Boosted Commerce's ("Boosted") founder—is a member (the "Upper90 Agreement"). Upper90Thrasio V SPV LLC, in turn, is an investor in Thrasio. It is undisputed that neither Thrasio nor Boosted is a signatory to the Upper90 Agreement. Defendants argue that Thrasio can nevertheless be deemed bound to the arbitration clause under principles of equitable estoppel. Defendants are wrong.

The doctrine of equitable estoppel creates a narrow exception to the general rule that a non-signatory cannot be compelled to arbitrate, and provides that a party that does not sign a contract may nevertheless be bound to its terms if it "knowingly exploits" the benefits of the agreement and seeks to enforce it as if it were a party, such that it can be deemed to have agreed to be bound. Here, Defendants do not and cannot show that Thrasio knowingly accepted the benefits of the Upper90 Agreement or is seeking to enforce the Upper90 Agreement. Indeed, Thrasio invoked the Upper90 Agreement in its complaint for one simple reason: its confidentiality clause (along with sixteen other writings) is evidence that Chanaratsopon knew that Thrasio information he was receiving in his capacity as an indirect investor was confidential, and thus supports the "misappropriation" element of Thrasio's DTSA and CUTSA claims. However, in light of the other sixteen writings, Thrasio would have no difficulty making out its case against Boosted without any reference to the Upper90 Agreement, and its claims thus plainly are not premised on that contract.

*A fortiori*, Boosted, a non-party to the Upper90 Agreement, also cannot compel

arbitration. Even if Thrasio were compelled to arbitrate with Chanaratsopon, Thrasio's claims against Boosted would proceed in this court.

Finally, the language of the clause itself shows that even if Thrasio should be deemed a party to the Upper90 Agreement, this dispute would not be arbitrable, as the clause carves out claims against LLC members (like Chanaratsopon) to enforce their obligations under the agreement. As Chanaratsopon and Boosted's theory is that this is, in essence, a claim to enforce Chanaratsopon's contractual confidentiality commitment under the Upper90 Agreement, it is necessarily carved out under this language.

For these reasons, the motion should be denied.

## BACKGROUND

As alleged in the complaint, Charles Chanaratsopon became a member of special-purpose vehicles managed by Upper90 (a venture capital firm), which in turn invested in Thrasio three times between March 2019 and June 2020. [Compl. ¶ 56.] In connection with these investments, Chanaratsopon gained access to Thrasio's confidential information in a dataroom hosted by Upper90 (the "Dataroom") and repeatedly downloaded Thrasio's confidential information between March 2019 and July 2020. [Compl. ¶¶ 60, 62.] Chanaratsopon used this information to enable Defendant Boosted (incorporated in December 2019) to unfairly compete with Thrasio. [Compl. ¶¶ 63-70.]

Thrasio sued Boosted and Chanaratsopon in February 2021.[1] The complaint asserts causes of action for misappropriation of trade secrets pursuant to the Defend Trade Secrets Act and California Uniform Trade Secrets Act, and unfair competition pursuant to Cal. Bus. and Prof. Code §§ 17200 *et seq*. [Compl. ¶¶ 71-98.]

To establish that Chanaratsopon knew that the information he was reviewing

---

[1] Thrasio initially sued Chanaratsopon in federal district court in Texas, but the parties stipulated to transfer that action to this district and have sought to consolidated it with the action against Boosted.

was confidential and belonged to Thrasio, the complaint alleges that Chanaratsopon was put on notice of the confidentiality of the material on at least seventeen separate occasions:

- In a December 2018 NDA with Upper90 [Compl. ¶ 54];
- In a March 2019 operating agreement governing the investment LLC for his first investment [Compl. ¶¶ 56-58];
- In the September 2019 operating agreement governing the investment LLC for his second investment [*id.*];
- Thirteen occasions between December 2019 and July 2020 when he logged into the Dataroom and clicked through a confidentiality acknowledgement [Compl. ¶ 60]; and
- In the June 2020 operating agreement for Upper90Thrasio V SPV LLC—the previously-defined Upper90 Agreement—governing the investment LLC for Chanaratsopon's third investment. [Compl. ¶ 59.]

The Upper90 Agreement—attached to Defendants' motion as Exhibit A to the Chanaratsopon Declaration—includes an arbitration clause. Neither Thrasio nor Boosted is a party to the Upper90 Agreement.

## ARGUMENT

### I. THRASIO IS NOT A PARTY TO THE UPPER90 AGREEMENT

"Arbitration is contractual by nature—'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 36 U.S. 574, 582 (1960)); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995) (explaining "central purpose" of the FAA is to enforce private agreements to arbitrate); *In re Henson*, 869 F.3d 1052, 1059 (9th Cir. 2017) ("[A]rbitration is a matter of contract…." (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986))). Thrasio is not a party to the Upper90 Agreement, and thus

cannot be required to arbitrate.

Defendants put the cart before the horse by analyzing the scope of the arbitration clause and invoking the "national policy favoring arbitration." [Defendants' Memorandum of Points and Authorities, Dkt. 27 ("Mem.") at 3-5.] That policy is irrelevant here, because Thrasio is not a party to the Upper90 Agreement. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (court must "look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement").[2] "Even the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement," and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration. *Jones v. Jacobson*, 195 Cal. App. 4th 1, 17 (2011), *as modified* (June 1, 2011). In this inquiry, "the party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences." *Crypto Asset Fund, LLC v. OPSkins Grp. Inc.*, 478 F. Supp. 3d 919, 925-26 (C.D. Cal. 2020) (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991)).

Here, as defendants acknowledge, Thrasio "was not a signatory" to the Upper90 Agreement. [Mem. at 6.] The parties to the Upper90 Agreement are the manager of Upper90Thrasio V SPV LLC (i.e. the special purpose vehicle) and its members, including Chanaratsopon. The Upper90 Agreement sets forth the duties and responsibilities of the members and the manager of the LLC as between one another as promisors and promisees. Thrasio is not a promisor or promisee. Accordingly, Thrasio cannot be required to arbitrate under the Upper90 Agreement unless Defendants can establish that Thrasio should nevertheless be deemed bound to it under general contract principles. As discussed in Section II below, they cannot.

---

[2] Furthermore, as Defendants concede (Mem. at 4), the question whether a party has agreed to arbitrate is for the court, not the arbitral forum. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564 (9th Cir. 2014) (court must "determine … whether a valid agreement to arbitrate exists" (quotation omitted)).

## II. THRASIO IS NOT ESTOPPED FROM REFUSING TO ARBITRATE

Despite acknowledging that Thrasio is not a signatory to the Upper90 Agreement, Defendants contend that Thrasio should be deemed a party based on equitable estoppel. [Mem. at 6-8 (citing *Int'l Paper Co. v. Schwabdissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000)).]

Equitable estoppel is "narrowly confined." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013); *see also Eclipse Consulting, Inc. v. BDO USA, LLP*, 2018 WL 6735085, at *6 (D. Or. Nov. 13, 2018) ("[E]xpanding estoppel to apply just as easily against nonsignatories . . . would threaten to overwhelm the fundamental premise that a party cannot be compelled to arbitrate a matter without its agreement." (quotation omitted)). It applies to a non-signatory only when a non-signatory "knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 199 (3d Cir. 2001)).

The cases cited by Defendants illustrate the narrow application of the doctrine: in each, the plaintiff was essentially deemed to be a party to the contract, despite not having been technically a signatory. In such circumstances, the plaintiff was estopped from avoiding application of arbitration clauses contained in the very contracts on which they were suing. In *Peck Ormsby Const. Co. v. City of Rigby*, 526 Fed. App'x 769 (9th Cir. 2013) (cited in Mem. at 7), a municipality sued to enforce a guarantee relating to a product it had purchased. Although it had not actually *signed* the guarantee contract, it purchased the equipment, had used the equipment, and was suing to enforce the guarantee. Thus, it could not avoid the arbitration clause. *Id.* at 770. Similarly, in *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411 (4th Cir. 2000), the plaintiff sued to enforce a warranty contained in an equipment purchase contract agreed to by its predecessor in interest; plaintiff received the faulty equipment at issue, but was not a

signatory to the contract. *Id.* at 414-15. Naturally, the court concluded that "the buyer cannot sue to enforce the guarantees and warranties of the distributor-manufacturer contract without complying with its arbitration provision." *Id.* at 413-14.[3]

By contrast, *Thomson–CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995) (cited in Mem. at 7), illustrates why equitable estoppel does not apply here. *Thomson-CSF* involved an exclusive supply contract between a manufacturer and a supplier. *Id.* at 775. A new acquirer bought the manufacturer, and the supplier sought to compel arbitration against the acquirer based on the preexisting contract. *Id.* at 776. The Second Circuit *reversed* the district court's order compelling arbitration, explaining that the arbitration agreement was not applicable to the non-signatory acquirer: the acquirer had "never acquired, nor sought to acquire" the parts supplied by the supplier, was not seeking to enforce the contract, and received only indirect benefits from the contract. *Id.* at 778-79. Thus, the acquirer had not knowingly exploited the underlying contract and could not be compelled to arbitrate the claims.

Here, Thrasio is suing for misappropriation of trade secrets and related unfair business practices—not for breach of contract. Thrasio's claims arise from the DTSA and CUTSA, as well as California's unfair competition law, and it seeks remedies available under these statutes. *See* 18 U.S.C. §§ 1836 *et seq.*; Cal. Civ. Code §§ 3426 *et seq*. As such, Thrasio is not exploiting or suing on the contract, and therefore cannot be compelled to arbitrate. *See Comer*, 436 F.3d at 1101-02 (ERISA claimant

---

[3] Similar fact patterns appear in Defendants' other cases as well. *See Deloitte Noraudit A/S v. Deloitte Haskins & Sells*, *U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993) (compelling arbitration against Norwegian affiliate of accounting firm which was named in agreement providing right to use the name "Deloitte," failed to object to it, and accepted its benefits by doing business under the name "Deloitte"); *Tamsco Props., LLC v. Langemeier*, 2013 WL 246782, at *5 (E.D. Cal. Jan. 22, 2013) (plaintiffs' claims were "based upon alleged obligations related to Defendants' performance under the Big Table agreement, and therefore are subject to the arbitration clauses that an individual member of each Plaintiff entity signed"); *Larson v. Speetjens*, 2006 WL 2567873, at *7-9 (N.D. Cal. Sept. 5, 2006) (client accepted legal services under retainer agreement and brought claims entirely based on that agreement, and could not escape arbitration clause merely because the retainer did not specify whether she was a client in her individual capacity, or as trustee for a trust).

COOLEY LLP
ATTORNEYS AT LAW

6

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

not bound by arbitration clause in fund management agreement to which he was not a party, because claims against fund manager were based on ERISA, not the duties created by the management agreement).

Indeed, Thrasio's claims do not depend on the terms of the Upper90 Agreement, but rather on a showing of "use" of trade secrets by one who "had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)(II). Here, Chanaratsopon acknowledged the confidentiality of the information at least sixteen times *apart from* in the Upper90 Agreement. As such, Thrasio could handily prove its case without mentioning the Upper90 Agreement, or invoking its confidentiality clause at all.

The law is clear that "merely making reference to an agreement with an arbitration clause is not enough" to justify equitable estoppel under the knowing exploitation standard. *Whole Body Rsch., LLC v. Dig. MD, LLC,* 2018 WL 3830902, at *6 (C.D. Cal. July 3, 2018) (quoting *In re Henson*, 869 F.3d at 1060). In *Whole Body Research*, plaintiffs sued former employees and their new employer for copyright infringement, after the employees copied plaintiffs' marketing materials. Although the employment contract contained both an arbitration clause and a confidentiality clause, the court found that the non-signatory plaintiffs were not required to arbitrate. *Id.* Plaintiffs were not asserting claims sounding in contract, but rather in violations of the Copyright Act. *Id.* Critically, equitable estoppel did not apply *even though* the employees' breach of their contractual confidentiality obligations was relevant to establish "evidence of access"—a factor in the copyright claim. *Id.* at *6-7.

The difference between *referencing* an agreement and *knowing exploitation* of an agreement is illustrated in the analogous case of *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 2012 WL 12960766 (C.D. Cal. Dec. 7, 2012). In *Infospan*, a service company entered into an agreement with a bank, pursuant to which the service

company gave the bank access to trade secrets belonging to its non-signatory affiliate. The bank misused these secrets. *Id.* at *2. The non-signatory affiliate sued the bank for misappropriation of trade secrets, and the bank moved to compel arbitration under the service agreement. The court held that equitable estoppel did not require the non-signatory to arbitrate:

> [H]ere, InfoSpan's tort claims do not seek enforcement of any contractual obligation between the Bank and [the signatory], and it is not seeking to claim any benefits founded on the Agreement itself . . . The Court has emphasized that InfoSpan's proprietary rights over [the proprietary information] exist independently of the Agreement and any burdens and benefits it imposed on the parties; the underlying torts are discrete, independent causes of action that do not rely on a breach of contract claim. . . . ***At best, any benefit InfoSpan derives from the Agreement, such as confidentiality guarantees, is indirect and has not led to InfoSpan 'exploiting (and thereby assum[ing]) the agreement itself***.

*Id.* at *5 (emphasis added) (internal citations omitted).[4] Here, as in *InfoSpan*, the confidentiality acknowledgment in the Upper90 Agreement is the kind of indirect benefit which does not warrant a finding of equitable estoppel.

Similarly, in *Waymo LLC v. Uber Techs., Inc.*, 252 F. Supp. 3d 934 (N.D. Cal. 2017), *aff'd*, 870 F.3d 1342 (Fed. Cir. 2017), the plaintiff sued a former employee and a competitor for misappropriation of trade secrets and the competitor attempted to enforce the arbitration clause in the former employee's employment agreement, which included a confidentiality clause. The Court declined to apply equitable estoppel, even though the plaintiff invoked the contract's confidentiality clause to

---

[4] Further reinforcing this point, later in the litigation, after the bank filed counterclaims against the plaintiff for breach of contract (on an alter ego theory), the *plaintiff* moved to compel arbitration of the bank's counterclaims. The court concluded that even the invocation of this direct benefit of the contract was not sufficient to warrant arbitration of the plaintiff's affirmative claims. *See InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 2015 WL 13423890, at *3 (C.D. Cal. Jan. 5, 2015) ("[Plaintiff] is not exploiting the [agreement] . . . rather, it is only exploiting the contractual relation of the Bank and [the signatory].").

support its contention that it took reasonable measures to safeguard its trade secrets. *Id.* at 937. The plaintiffs' *invocation of* this clause was not sufficient to justify equitable estoppel. *Id.* at 938.

*InfoSpan* and *Waymo* are just two examples from this circuit in which courts have refused to apply equitable estoppel on similar facts. Many other illustrative cases exist in other circuits as well. *See, e.g.*, *LBDS Holding Co., LLC v. ISOL Tech. Inc.*, 2012 WL 12893527, at *2-5 (E.D. Tex. Sept. 20, 2012) (non-signatory trade secret plaintiffs not required to arbitrate under R&D contract); *Ayco Co., L.P. v. Frisch*, 2012 WL 42134, at *9-10 (N.D.N.Y. Jan. 9, 2012) (non-signatory trade secret plaintiff was not required to arbitrate pursuant to licensure agreements signed by former employees); *Cherry Creek Card & Party Shop, Inc. v. Hallmark Mktg. Corp.*, 176 F. Supp. 2d 1091, 1098-99 (D. Colo. 2001) (non-signatory trade secret plaintiff not required to arbitrate under franchise agreements).

Here, just as in *InfoSpan* and *Waymo*, Thrasio is not "exploiting" a contractual benefit while rejecting the same contract's obligations. Thrasio is instead enforcing proprietary rights that exist independent of the contract, and invoking statutes that provide relief independent of the promises made by Chanaratsopon to *non-parties to this dispute* in the Upper90 Agreement, which are merely cumulative evidence of Chanaratsopon's knowledge that the materials he accessed and misused were confidential.

Thrasio therefore is not equitably estopped from proceeding in court.

### III. BOOSTED CANNOT INVOKE THE ARBITRATION CLAUSE

Boosted, like Thrasio, is also a non-signatory to the Upper90 Agreement. Yet Defendants argue that Boosted can enforce the arbitration clause against Thrasio, which (as discussed above) is *also* a non-signatory. But Boosted's arguments for compelling arbitration of the claims against it are even weaker than Chanaratsopon's. No doctrine of contract law enables Boosted to invoke the arbitration clause against Thrasio here.

Defendants assert that "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." [Mem. at 8 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983)).] But such "other persons"—like Boosted—cannot compel arbitration. Even if the dispute with Chanaratsopon were arbitrable (which it is not), the dispute with Boosted would still be resolved in court, while the dispute with Chanaratsopon would be sent to arbitration. *See Moses H. Cone Mem. Hosp.*, 460 U.S. at 20 ("If the dispute . . . *is* arbitrable under the [FAA], then the Hospital's two disputes will be resolved separately—one in arbitration, and the other (if at all) in state-court litigation."). This result is required by the FAA, "even if this will lead to piecemeal litigation." *Infospan*, 2015 WL 13423890, at *3 (quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011)).

Defendants contend that Boosted can enforce the arbitration clause based on agency or third-party beneficiary status. [Mem. at 9.] But Chanaratsopon did not sign the Upper90 Agreement as an agent of Boosted, and Boosted is not a third-party beneficiary of the Upper90 Agreement. Chanaratsopon became a member of Upper90Thrasio V SPV LLC for his own purposes and solely in his personal capacity, not as an agent for Boosted. Boosted is not even mentioned in the Upper90 Agreement; it is neither a promisor, nor a promisee, nor a beneficiary under that agreement. Thus, Boosted is not entitled to enforce the Upper90 Agreement.

All of Defendants' cases concerning enforcement of arbitration clauses by non-signatories are distinguishable, as they involved straightforward application of settled contract law principles where a non-signatory sought to compel a *signatory* to arbitrate. None of them involved the present situation: a *non-signatory* seeking to compel another *non-signatory* to arbitrate.[5]

---

[5] *See Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1188 (9th Cir. 1986) (non-signatory employees of brokerage were entitled to enforce arbitration clause in brokerage agreement against signatory customer, because the brokerage "has clearly indicated its intention to

1    It is not surprising that Defendants have been unable to find precedent in which a non-signatory has been able to enforce an arbitration clause against another non-signatory. On the other hand, many cases exist in which courts have declined the invitation to do so. *See, e.g., Chemence, Inc. v. Quinn*, 2012 WL 12873615, at *4 (N.D. Ga. Oct. 15, 2012) ("As a preliminary matter, the defendants attempt to assert that nonsignatories may compel another nonsignatory under some remote contract containing an arbitration clause. Defendants have not cited, and the court cannot find, any cases for this assertion."); *Kuroda v. SPJS Holdings, L.L.C.*, 2010 WL 4880659, at *7 (Del. Ch. Nov. 30, 2010) (declining to require nonsignatory to arbitrate with another nonsignatory, and noting absence of cases).

## IV.   THE ARBITRATION CLAUSE DOES NOT COVER THIS DISPUTE

Even if Thrasio could be deemed a party to the Upper90 Agreement (which it is not, for the reasons discussed above), Thrasio would not be required to arbitrate these claims, based on the plain text of the arbitration clause. The clause provides:

> **14.8 Dispute Resolution**. Any dispute, controversy or claim arising out of or relating to this Agreement, or the breach of this Agreement, *except for any claim or action that the Manager or Fund may elect to commence to enforce any of its rights or the Members obligations under this Agreement or the Subscription Agreement*, will be settled by binding arbitration, before three arbitrators, administered by the American Arbitration Association under and in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction.

[Dkt. 27-2, Ex. A at 30 (emphasis added).] This clause carves out claims to enforce

---

protect its employees through its Customer Agreement"); *Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*, 622 F. Supp. 2d 825, 836-41 (N.D. Cal. 2007) (non-signatory hedge fund employees were entitled to compel signatory investor to arbitrate, even though they were not individually parties to contract containing arbitration clause); *Chavez v. Bank of America*, 2011 WL 4712204, at *6 (N.D. Cal. Oct. 7, 2011) (service provider was entitled, as an intended third-party beneficiary, to enforce terms of service between bank and customers pertaining to the services it provided).

the obligations of Members like Chanaratsopon, which include the duty of confidentiality in § 9.6, from arbitration. Because the premise of Defendants' argument in favor of arbitration is that this lawsuit is, in essence, an action to enforce Chanaratsopon's contractual duty of confidentiality, Thrasio's claims would be carved out of the arbitration clause.

The carve-out applies to claims "that the Manager or Fund may elect to commence." [Dkt. 27-2, Ex. A at 30.] While Thrasio is not the Manager or the Fund, Defendants' motion to compel arbitration essentially contends that Thrasio is a beneficiary of the Manager or Fund's right to enforce Chanaratsopon's duty of confidentiality. Accordingly, to the extent Thrasio is deemed to be a beneficiary of the obligation of confidentiality in the Upper90 Agreement and thus bound by it, it would only be because it stands in the shoes of a Manager or the Fund. Accordingly, this dispute would fall within the scope of the carve-out and should not be submitted to arbitration.

## CONCLUSION

For these reasons, Thrasio respectfully submits that it cannot be compelled to arbitrate and requests that the Court deny Defendants' motion to compel.

Dated: April 20, 2021

COOLEY LLP

By: /s/ Randall R. Lee

Randall R. Lee
randall.lee@cooley.com
1333 2nd Street, Suite 400
Santa Monica, CA 90401-4100
Tel. (310) 883-6485
Fax. (310) 883-6500

Philip M. Bowman, *pro hac vice*
pbowman@cooley.com
Nicholas A. Flath, *pro hac vice*
nflath@cooley.com
55 Hudson Yards
New York, New York 10001
Tel. (212) 479-6000
Fax. (212) 479-6275

*Attorneys for Plaintiff*