SANFORD L. MICHELMAN (SBN 179702)
smichelman@mrllp.com
TIMOTHY J. GORRY (SBN 143797)
tgorry@mrllp.com
ALEXANDER R. SAFYAN (SBN 277856)
asafyan@mrllp.com
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Boulevard, 19th Floor
Los Angeles, California 90024
Telephone: (310) 299-5500
Facsimile:  (310) 299-5600

Attorneys for Defendants
BOOSTED COMMERCE INC.,
BOOSTED ECOMMERCE, INC., and
CHARLES CHANARATSOPON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THRASIO, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BOOSTED COMMERCE, INC., BOOSTED ECOMMERCE, INC., and CHARLES CHANARATSOPON,<br><br>　　　　Defendants. | Case No. 2:21-cv-01337-CBM-SK (consolidated with Case No. 2:21-cv-02422-CBM-SK)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**<br><br>Date:　　　December 14, 2021<br>Time:　　　10:00 a.m.<br>Courtroom: 8B, 8th Floor<br>Judge:　　　Hon. Consuelo B. Marshall<br><br>[Reply Declaration of Sanford L. Michelman submitted herewith]<br><br>Action Filed:　February 21, 2021<br>Trial Date:　　None set |

## I. INTRODUCTION

Defendants' Rule 11 motion[1] should be granted since Thrasio essentially concedes that it lacks evidence—because there is none—to allege Defendants used *any* of its alleged trade secrets (of which there are none). In their moving papers, Defendants cited the established rule in the Ninth Circuit that litigants have "a duty *prior* to filing a complaint" to ensure the complaint has a factual and legal basis and is not being filed for an improper purpose. (*See* Mot. at 1, 9 (citing *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)).) Thrasio's opposition not only fails to address this rule, but its theme that Defendants are trying to "avoid discovery" reveals a backwards interpretation of the applicable law. *Christian* makes clear that a party cannot file a complaint in federal court and then seek the evidence necessary to comply with Rule 11's requirement that "the factual contentions have evidentiary support." Rather, there must be a factual and legal basis for the complaint *before* it is filed, which is clearly not the case here.

Thrasio's opposition admits that Thrasio did not have a sufficient factual or legal basis to file its Complaints against Defendants. Thrasio demands discovery to back-fill the allegations in its Complaints, which is improper and squarely the type of conduct prohibited by Rule 11. Defendants demonstrated in their moving papers—citing to public materials as well as providing a sworn declaration from Chanaratsopon—that Thrasio's purported trade secrets are not, in fact, secret, and its Complaints are factually baseless. The superficial arguments Thrasio offers in opposition—which label Defendants' evidence "selective" and "misleading" and their denials of wrongdoing "conclusory" while offering no citation to *any* evidence to support its pure lawyer argument—should be rejected. Thrasio's bad-faith

---

[1] Defendants Boosted Commerce, Inc. and Boosted Ecommerce, Inc. (collectively "Boosted") and Charles Chanaratsopon filed separate Rule 11 motions because they prepared and served their motions prior to the actions, Nos. 21-cv-01337 and 21-cv-02442, being consolidated. For the Court's convenience, Defendants are filing a single, consolidated reply brief. Citations to "Motion" herein are to Boosted's Motion (No. 21-cv-01337, Dkt. 56). All emphases herein are added and internal citations omitted unless stated otherwise.

Complaints should be dismissed, and sanctions, including attorney's fees, should be awarded to Defendants. (*See* Michelman Reply Decl. ¶¶ 12-18.)

II. **ARGUMENT**

    A. **Thrasio's Detailed Public Disclosures of its Purported Trade Secrets Speak for Themselves**

Thrasio first argues that the public disclosures of its purported trade secret business processes do not negate their status as "trade secrets" for purposes of a misappropriation claim. Thrasio asserts that the public disclosures do nothing more than recognize the *existence* of its trade secrets, which is not equivalent to disclosure of the secrets themselves. But it is self-evident that the public disclosures do far more than simply acknowledge the existence of Thrasio's business processes. And the Court need not accept Thrasio's subjective and self-serving characterization of these disclosures because Defendants provided links to access the materials in full in their moving papers (Mot. at 4-6, 11).[2]

Indeed, Thrasio's attempt to characterize the trove of public information Defendants cite as, among other things, "generic" and lacking "specifics," is remarkable. The Court can easily see for itself the degree to which Thrasio has made its "secret" business processes publicly known. The cited articles and business guides demonstrate that Thrasio's "diligence" process and "integration" process are used by literally every company that operates in Thrasio's industry. (*See* Mot. at 11, n.5.) There are over 70 companies in the industry, including Boosted, all of whom (1) conduct diligence, and (2) integrate Amazon merchants into their platform the same way Thrasio does. (*See* Chanaratsopon Decl., Dkt. 56-2, ¶¶ 3, 7; https://www.fastcompany.com/90686788/thrasio-perch-amazon-aggregators.) Two of the articles are written by the major brokers in the industry who work directly with Thrasio to locate and onboard third-party merchants into Thrasio's platform. Thrasio's own executives have publicly admitted that Thrasio's business processes are not unique or

---

[2] Defendants have also provided written transcripts of the interviews cited in their moving papers for the Court's review. (*See* Michelman Reply Decl. ¶¶ 5-11, Exs. A-F.)

proprietary. (Mot. at 7-8 (Thrasio does not have a "particular twist on the market"; "there's no formulaic approach we take"; Thrasio's business model "is not an original idea").) Of course, these public admissions are inconsistent with Thrasio's litigation position, a conflict which demonstrates the fact that Thrasio's Complaints fall within the ambit of Rule 11(b)(1) and (b)(3).

The notion that Thrasio's executives' public statements over nearly two years prior to the filing of these lawsuits are simply "high level" and non-specific is undermined by the statements themselves. While Thrasio accuses Defendants of "selectively" and "misleadingly" quoting Thrasio's executives "out of context," Thrasio itself fails to offer any different context for the various statements that would alter their plain meaning. Defendants provided over three full pages of quotes taken from six interviews spanning more than a year and provided links to each of the interviews so the Court can listen to them directly. (Mot. at 4-8; *see also* Michelman Reply Decl. ¶¶ 5-11, Exs. A-F (written transcripts of interviews).) By contrast, Thrasio glosses over the interviews and cites a single example it contends is not specific enough to constitute a disclosure. (Opp., Dkt. 60, at 5.) Thrasio utterly ignores the multitude of examples that are specific disclosures, which, taken together, demonstrate that Thrasio has publicly disclosed its allegedly "secret" business processes. Defendants will not repeat the dozens of quotes included in their moving papers, but will reiterate that these disclosures reveal specific details about what Thrasio looks for in potential acquisition targets (ranking on Amazon.com, range of revenue, profit margin, ad spend percentage, etc.); how Thrasio values these businesses to determine what monetary offer to make (2.2 to 2.25 times revenue for the trailing 12 months); what Thrasio's diligence process entails (taking over the merchant's seller central account, which offers "a canonical source of data" that allows Thrasio to conduct the same standard diligence "over and over again"); Thrasio's acquisition timeline (30-45 days); what Thrasio does to improve its acquisitions' products and listings; and even how prospective competitors can create their own *"*mini-Thrasio" utilizing these alleged "secrets."

The cases Thrasio cites for the proposition that disclosure of the existence of a trade secret is not equivalent to disclosure of the secret itself are irrelevant. The premise for citing those cases, that Thrasio's detailed public statements and wealth of information about its business processes reveal nothing more than the *existence* of those processes, is false. Furthermore, Thrasio's attempt to undermine the cases cited on page 12 of Boosted's motion on the ground that none of them imposed sanctions is not persuasive. Defendants cited those cases only to demonstrate the principle that public disclosure of a trade secret defeats the "secret" (i.e., if it is publicly known, it cannot be a trade secret). To be sure, there are numerous instances where a court imposed sanctions on a party for making a specious misappropriation claim. *See, e.g., VSL Corp. v. Gen. Techs., Inc.*, 1998 WL 124208, at *4 (N.D. Cal. Jan. 5, 1998) (imposing sanctions for specious claim where plaintiff's president knew purported trade secret information was not, in fact, secret); *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1274, 1276-77 (2009) (imposing sanctions for specious CUTSA claim where, as here, action "was premised on the theory that respondents could not [operate their business] based on the … time line without misappropriating trade secrets"; "speculation that [defendant] may misappropriate and use a trade secret in a startup business" is not sufficient; *compare* Thrasio's Compl., No. 21-cv-01337, Dkt. 1, ¶ 70 ("Boosted would not have been able to launch its business in the time that it did without stealing the confidential, proprietary business processes that were developed by and belong to Thrasio.")). Thrasio's misappropriation claims are similarly specious and subject to sanctions for that reason.

### B. Thrasio Does Not Allege Essential Facts to Support its Misappropriation Claims

Thrasio's second argument is that its Complaints are not factually baseless because Thrasio is entitled to rely on circumstantial evidence to allege misappropriation. This argument misses the mark. The issue is not whether Thrasio can offer direct or circumstantial evidence of misappropriation, but whether Thrasio has actually alleged any *facts* which, even if proved true, would establish actual misappropriation. Thrasio has not—

because it cannot do so.

As an initial matter, it is not "undisputed," as Thrasio contends, that Chanaratsopon "repeatedly downloaded" the alleged trade secret information and "simultaneously founded a copycat company, Boosted." (*See* Opp. at 2, 7.) This allegation is disputed. Thrasio offers no evidentiary support whatsoever for its naked assertion that this is an undisputed fact.[3]

More importantly for present purposes, Thrasio's allegations, even if true, relate only to one part of a misappropriation claim: access to the purported trade secret. Thrasio does not—and cannot under any circumstance, which makes Rule 11(b)(3) applicable—satisfy its burden to allege any facts sufficient to establish *misappropriation* of the purported trade secret. As explained in Defendants' moving papers, the elements of a misappropriation claim under the DTSA, CUTSA, and TUTSA include actual misappropriation, or proof of a wrongful "disclosure or use" of a trade secret. (*See* Mot. at 10, 12; *see also* Pl.'s Opp. to Mot. to Dismiss, Dkt. 59, at 5 (recognizing that "[m]isappropriation—that is, misuse of trade secrets—is an element of each of these claims [DTSA, CUTSA, and TUTSA].").) The critical point here is that Thrasio alleges *no facts* demonstrating any wrongful disclosure or use (or any disclosure or use at all) by Defendants. While on the surface Thrasio's Complaints appear to have many allegations (approximately 100 numbered paragraphs), upon scrutiny, it is clear that the only allegation even aimed at the "misappropriation" element is completely hollow. After spending approximately 70 paragraphs discussing other matters, Thrasio's entire allegation regarding Defendants' alleged misappropriation is contained in a single, conclusory paragraph:

> "The full extent of Boosted's misappropriation will be revealed in discovery, but there can be no doubt that Boosted has

---

[3] Defendants have only confirmed that Chanaratsopon had *legal, proper, and consensual* access to Thrasio's "dataroom," not that he actually downloaded the information. As for the allegation that Chanaratsopon founded a "copycat company, Boosted," the reality is Boosted was formed *before* Chanaratsopon invested and there are dozens of such companies in Thrasio's and Boosted's industry that have the exact same business model. This is not evidence of any wrongdoing.

misappropriated Thrasio's Standard Diligence Process and the Standard Integration Process, and has used it to unfairly compete with Thrasio. Indeed, Boosted would not have been able to launch its business in the time that it did without stealing the confidential, proprietary business processes that were developed by and belong to Thrasio."

(Compl., No. 21-cv-01337, Dkt. 1, ¶ 70; No. 21-cv-02442, Dkt. 1, ¶ 72.)

That is all Thrasio has: an unsupported conclusion that because Boosted "launch[ed] its business in the time that it did," it must have misappropriated Thrasio's confidential business processes. That is not close to sufficient. There are no facts in that allegation. There are no facts anywhere in Thrasio's Complaints regarding any wrongful use or disclosure of any purported trade secret by Defendants. Stated more bluntly, it is impossible to identify a single piece of paper, a document, a page—*anything*—that Thrasio alleges Defendants misappropriated. Thrasio dodges identifying a single thing to defeat Defendants' motion. It defies logic that if Thrasio is facing the unique, rarely used, and harsh remedy of Rule 11 sanctions, it would not attach just one page to demonstrate what Defendants allegedly misappropriated. Since it did not—because it cannot—Thrasio has lost its chance to defeat this Rule 11 motion.

Thrasio argues that it "is entitled to take discovery to determine precisely what Chanaratsopon did with the information he downloaded, and *whether* … Boosted used that information to jump-start its own operations." (Opp. at 7.) Not so. First, the word "whether" is an admission that Thrasio has no information and filed its Complaints based on mere speculation. That is sanctionable. Under Rule 11 and applicable Ninth Circuit authority, Thrasio must have a factual basis for alleging that Defendants actually used the information *before* filing its Complaints—not after, with the benefit of discovery. Next, Defendants' denial of wrongdoing is not "conclusory" or "blanket." While not even required, Defendants provided a sworn declaration from Chanaratsopon that unequivocally denies any wrongdoing. (*See* Chanaratsopon Decl., Dkt. 56-2, ¶ 7.) Conversely, Thrasio has not cited a shred of evidence (not a single declaration or even citation to public record)

to support its factually baseless claims. The fact that Thrasio's own executives would not sign a declaration speaks volumes as to the frivolity of its Complaints.

Because Thrasio's Complaints were filed without a factual basis for an essential element of its claims, Thrasio has violated Rule 11, and sanctions against it are warranted.

### C. Thrasio's Empty Denial of an Improper Purpose is Not Compelling and Does Not Provide a Reason to Deny Defendants' Motion

As mentioned in Defendants' moving papers, filing or presenting a paper to the court for an improper purpose is an independent ground to award sanctions under Rule 11. *See* Fed. R. Civ. P. 11(b)(1). Defendants presented compelling evidence to demonstrate that Thrasio filed its Complaints for an improper purpose—including the timing of the filing and Thrasio's extrajudicial conduct immediately following the filing. (*See* Mot. at 14.) Thrasio offers a bare, self-serving denial of filing its Complaints for an improper purpose, but tellingly, it offers no evidence to support this denial. Thrasio could have offered a statement from one of its executives stating, under penalty of perjury, that Thrasio brought these lawsuits in good faith and not as an illicit attempt to take down a rising competitor in Boosted. Thrasio's lawyers could have described the investigation they undertook before signing off on the Complaints. But neither Thrasio nor its lawyers did any of that, because it appears not only that Thrasio's own executives will not sign a declaration, but its lawyers will not do so detailing what they allegedly did in advance of filing these frivolous lawsuits. Thrasio has offered nothing besides argument attempting to minimize Defendants' evidence. The Court should treat this silence for what it is: a concession that Thrasio did not have a good faith motive for filing its lawsuits.

Thrasio's unsupported arguments are also not persuasive. Thrasio cannot deny that its lawsuits were designed to preserve its market position. It cannot deny that it waited more than a year after Boosted was founded to file its lawsuits. It cannot deny that its lawsuits were filed shortly after Boosted announced a financing round. And it cannot deny that immediately after filing the Complaints, it contacted Boosted's investors with news of the suits to damage Boosted's position in the marketplace. Rather than "win" with a better

product, Thrasio is trying to drain Boosted with legal fees and defaming it with these frivolous lawsuits.

The argument that Thrasio sent letters to Boosted's investors under the guise of "document preservation notices" is hard to take seriously. What "relevant data" could a third-party investor of Boosted possibly have about Thrasio? The letters were an obvious ploy to harm Boosted's standing and elevate Thrasio's own standing among potential future investors and acquisition targets.

The Court should not accept Thrasio's unsupported arguments and excuses for why it filed these lawsuits.

### D. Thrasio's Request for Attorneys' Fees Should Be Rejected

Thrasio throws in a request for attorneys' fees at the end of its opposition, claiming that Defendants' Rule 11 motion itself is improper. This request is unfounded and should be rejected. Defendants have demonstrated that Thrasio's Complaints fit the criteria of both Rule 11(b)(1) and (b)(3). Defendants have offered evidence to support their position, while *Thrasio has offered none*. As explained previously, the only reason Defendants did not file their Rule 11 motions earlier was because they did not want to take any act inconsistent with the right to arbitrate and risk arguments of waiver in connection with their motions to compel arbitration.[4] *See Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016) (noting that a request for a decision on the merits may contribute to a finding of waiver of the right to arbitrate). Even if the Court declines to award sanctions (though it should award them, for all the reasons discussed above), in no event would attorneys' fees to Thrasio be proper.

## III. CONCLUSION

As detailed in Defendants' moving papers and above, Thrasio brought its claims without a basis to do so and sued Defendants for an improper purpose. Thrasio's opposition makes clear that its goal was to push the litigation into the discovery phase so that Thrasio

---

[4] Had the Court sent the matter to arbitration, Boosted would have been required to submit the substantive issue of sanctions for failure to have a basis for the Complaints to the arbitrator.

could fish for some adequate basis to support its Complaints. For those reasons, Defendants respectfully request that the Court grant their Rule 11 motions, dismiss Thrasio's Complaints, and award Defendants' attorney's fees as detailed in the concurrently filed Michelman Reply Declaration.

Dated: November 30, 2021        **MICHELMAN & ROBINSON, LLP**

By:   */s/ Sanford L. Michelman*
Sanford L. Michelman
Timothy J. Gorry
Alexander R. Safyan
Attorneys for Defendants
BOOSTED COMMERCE, INC., BOOSTED ECOMMERCE, INC., and CHARLES CHANARATSOPON